## Elicker v. Elicker

*Harry B. Crytzer*, for libellant.

RICE, P. J., February 1, 1945.—In this divorce three subpœnaes were issued and returned non est inventus, but an order of publication in a newspaper was not issued. On October 30, 1943, on an affidavit that the respondent was in the military service of the United States, the court appointed S. E. Troutman, Esq., a member of the bar, as an attorney for respondent, under the Soldiers' and Sailors' Civil Relief Act of October 17, 1940, 54 Stat. at L. 1178, "who shall ascertain, if possible, the defense, if any, of the re-

spondent and represent him before the master". On December 31, 1943, the same day the pluries subpœna was issued, Mr. Troutman entered a general appearance for respondent. In the petition for appointment of a master, the issuance and return of the three subpœnas and the general appearance of Mr. Troutman were averred, but the court was not reminded, by any averment in the petition or by any oral statement of counsel, of the source of Mr. Troutman's authority. No subpœna having been personally served and no notice to respondent having been published, the question arises whether the court has jurisdiction by reason of the general appearance of the appointed attorney.

Section 200(3) of the said act of Congress provides:

"In any action or proceeding in which a person in military service is a party if such party does not personally appear therein or is not represented by an authorized attorney, the court may appoint an attorney to represent him. . . . But no attorney appointed under this Act to protect a person in military service shall have power to waive any right of the person for whom he is appointed or bind him by his acts."

Section 31 of The Divorce Law of May 2, 1929, P. L. 1237, as amended by the Act of July 10, 1935, P. L. 644, provides:

"The respondent may . . . cause an appearance to be entered . . . , and the entry of a general appearance shall be equivalent to personal service of the subpœna and libel.

"The entry of a general appearance by, or in behalf of, a respondent shall not be deemed collusion."

The Pennsylvania statute clearly implies that an attorney entering an appearance for a respondent must be one who was selected, employed, and authorized by respondent to act for him in the particular proceeding in which the appearance is entered. If libellant had anything to do with the selection of such attorney, such appearance would savor strongly of collusion. To

prevent any suspicion of collusion, it might be wise to have a rule of court requiring the filing of a letter of attorney from respondent, as provided in the rules of court of some counties: Moore v. Moore, 51 D. & C. 493, 494. Where it appears as a fact in the case that the attorney entering an appearance was not selected, employed, and authorized by respondent, his appearance should be regarded as a nullity. This conclusion is directly in harmony with the provision of the act of Congress that "no attorney appointed under this Act . . . shall have power to waive any right of the person for whom he is appointed or bind him by his acts". To acquire jurisdiction over respondent in a divorce case a subpœna must be personally served or notice to him must be published after two subpœnas are returned non est inventus, and the appointed attorney cannot waive the statutory requirement by entering an appearance and such appearance cannot bind respondent. A divorce decree based on jurisdiction acquired by such appearance is open to grave attack. The court did not empower the attorney to enter a general appearance for respondent and did not have authority under the act of Congress to give such authority. We are of the opinion, therefore, that the general appearance entered by the appointed attorney is a nullity and the court does not have jurisdiction over respondent.

In coming to this conclusion we feel obliged to disagree with the opinion of Judge Ervin, of Delaware County, in Moore v. Moore, supra, who held that the appearance of an attorney appointed by the court for a respondent in the military service was equivalent to personal service according to the section of The Divorce Law quoted above, but he does not consider the above-quoted provision of the act of Congress and makes no distinction between an attorney selected and employed by respondent and an attorney appointed by the court under the act of Congress.

It will be necessary for the libellant to get constructive service by publication, unless an attorney selected and authorized by respondent for the specific purpose enters a general appearance and, since a master should not be appointed until service, actual or constructive, is had and a proper return thereof made, all proceedings before the master will have to be set aside and his appointment will have to be revoked. A master will have to be appointed again, and he will have to take the testimony again and proceed as if a master had not been previously appointed.

<em>Decree</em>

And, now, February 1, 1945, the report of the master is disapproved, the appointment of the master on June 20, 1944, is revoked, and all proceedings before him are set aside, and leave is given libellant to proceed by having an order of publication issued.